First National Bank of Georgetown v. Commissioner.
First Natl. Bank of Georgetown v. Commissioner
Docket No. 112357.
United States Tax Court
1943 Tax Ct. Memo LEXIS 149; 2 T.C.M. (CCH) 656; T.C.M. (RIA) 43391; August 18, 1943
*149 P. McKinley Harris, Esq., and W. A. Hifner, C.P.A., 145 East High, Lexington, Ky., for the petitioner. Philip M. Clark, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income and declared value excess profits taxes for the year 1939 in the respective amounts of $2,665.99 and $1,673.85, or a total deficiency for 1939 of $4,339.84. That part of the deficiencies here in question resulted from the Commissioner's action in reducing the cost basis of certain bonds sold by petitioner in 1939 by the amounts of charge-offs and deductions for bad debts taken by petitioner in earlier years on account of the partial worthlessness of such bonds, although no tax benefit resulted from some of the deductions. Findings of Fact The facts were stipulated by the parties, and are found to be as stipulated. They are set forth here in condensed form in so far as they are essential to this decision. The petitioner is a corporation organized as a national bank with its principal place of business in Georgetown, Kentucky, and filed its income tax return for 1939 with the collector for the district of Kentucky. In 1939 petitioner sold *150 certain bonds which it had held for some years, at a price greatly under the cost of those bonds to it. They had been carried on the books at cost until, beginning in 1929, the national bank examiners ordered them written down on the books, at various times, by certain flat percentages, at which times the required write-downs were effected and the bonds thereafter carried at the written-down values. The following table reflects the transactions with respect to the several holdings of bonds involved here: Sale
Date of
Description of
Purchase
Dates and amts.
Final book
price
Purchase
bonds
price
of write-downs
values
in 1939
6-28-25
5M Kansas City Public Serv. 4%
$4,860.00
6-29-29
$ 302.50
6-30-30
500.00
1-21-31
407.50
8-25-33
1,400.00
10-25-33
900.00
$1,350.00
$1,235.00
2-6-28
10M Seaboard Air
Line R.R. 5%
9,937.50
6-29-29
546.85
1-21-31
2,090.65
9-17-31
6,700.00
600.00
514.44
2-19-29
5M Winchester
Repeating Arms
6 1/2%
4,959.38
1-21-31
219.54
9-17-31
4,589.84
6-30-38
150.00
None
939.86
All of the write-downs, except that of $150 on June 30, 1938, on the Winchester *151 Repeating Arms bonds, were claimed by petitioner as deductions for bad debts in the years in which they were taken, and were allowed by the respondent as claimed. Petitioner's income tax returns for 1929 disclosed a gross income of $31,395.95 and gross deductions of $29,844.13, which included a write-down of $849.35 on bonds sold in 1939. The income tax return for 1930 disclosed a gross income of $30,061.07 and gross deductions of $28,989.25, including a write-down of $500 on bonds sold in 1939. The income tax return for 1931 disclosed a gross income of $27,988.11, and gross deductions of $63,047.27, such deduction including a write-down of $14,007.53 on bonds sold in 1939. The income tax return for 1933 disclosed a gross income of $19,778.06 and gross deductions of $22,684.31, including a write-down of $2,300 on bonds sold in 1939. Opinion KERN, Judge: The petitioner claimed a capital loss in 1939 resulting from the sale of certain bonds at prices greatly less than their cost to petitioner in earlier years. Respondent reduced the basis of those bonds by subtracting from their costs the amounts by which the bonds had in prior years been written down on the books of the petitioner *152 by order of the Federal bank examiners. These amounts had been taken as deductions by petitioner in its income tax returns for the years in which such write-downs were made, but in those years the deductions had not resulted in any tax benefit to petitioner, since the amount of the other deductions taken by petitioner plus the specific credit granted by section 26 (b), Revenue Act of 1928, was in excess of its gross income. The question presented for decision, therefore, is whether under this set of facts the Commissioner erred in thus reducing the basis of the bonds in calculating petitioner's capital loss in 1939. The petitioner recognizes the similarity between the facts of this case and those in , but it attempts to distinguish that case by the fact that there the deductions were on account of bonds which were properly and voluntarily ascertained by the bank to have become partially worthless in a specific amount, while in this case the write-downs were required by the bank examiner, and the record indicates that they were ordered on the basis of a flat percentage of the face value of the bonds. Petitioner urges that *153 this did not constitute a proper ascertainment of partial worthlessness, and the deductions were erroneously taken and allowed; and that in any event, they should not now be charged against petitioner's cost basis as to these bonds, since they were not voluntarily taken and resulted in no tax benefit. Petitioner has the burden of showing the deductions to have been erroneous. There is no evidence tending to show that the bonds had any value other than that determined by the bank examiner, and there is no showing that petitioner believed them to have had any other value. The fact that the petitioner claimed as bad debt deductions the amounts so written down might be some indication that petitioner concurred in the examiner's estimate of the then value of the bonds. While petitioner was required to write the bonds down on its books when ordered to do so by the bank examiner, we know of no provision of the law or the regulations which required it to take the deductions on account of the partial worthlessness of such bonds in its income tax returns for the years when the write-downs were made unless there was, in fact, a demonstrable partial worthlessness of the bonds, and we are offered *154 no reason why it did so if it did not agree that the bonds had become worthless to the extent indicated. See . We do not feel that petitioner has sustained its burden of proof that the deductions were erroneously claimed and allowed. With that established, this case can not be materially distinguished from , and we therefore decide, on the authority of that case, that the Commissioner did not err in reducing the basis of the bonds to the extent of such deductions, notwithstanding the fact that petitioner enjoyed no tax benefit therefrom in the years of such deductions. Respondent is not attempting to require any net gain (computed on the reduced bases) to be included in petitioner's taxable income in 1939, having expressly waived any claim with regard thereto on brief. Therefore, we are not called upon to construe the provisions of section 116 of the Revenue Act of 1942 as applicable to the facts of this case. Decision will be entered under Rule 50.